# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHAEL DELILLO,** | : | **Civil No.  4:25-CV-523** |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **FRANK BISIGNANO**,[1] | : | |
| **Commissioner of Social Security,** | : | |
| | : | |
| **Defendant.** | : | |

## MEMORANDUM OPINION

### I.    Introduction

This case involves a recurring issue in Social Security litigation: The alleged failure of the ALJ to incorporate a one-to-two step task limitation made by a medical source the ALJ deems persuasive into a claimant's residual functional capacity assessment.

This can be an outcome determinative error since a claimant's ability to perform the mental demands of the workplace are often essential to the disability determination. Therefore, when an individual's ability to perform one-to-two step

---

[1] Frank Bisignano became the Commissioner of Social Security on May 6, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano should be substituted as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1

tasks is at issue in a Social Security appeal, it is incumbent upon the Administrative Law Judge (ALJ) hearing this disability claim to provide a logical bridge between the evidence and the ALJ's legal conclusions and factual findings, a logical nexus which addresses the claimant's mental limitations in these areas and explains how they do not preclude employment.

Although it is ultimately the ALJ who makes the RFC determination, and determines which medical opinions and evidence deserve greater weight, it is also well-settled that, when evaluating medical opinions, an ALJ should refrain from substituting his own lay opinion in place of a medical opinion. See Morales v. Apfel, 225 F.3d 310, 319 (3d Cir. 2000). Moreover, while the ALJ may choose which medical opinions are persuasive, "[f]or each limitation opined necessary by a persuasive medical source, the ALJ is obligated to either: (1) incorporate that limitation in the claimant's RFC, or (2) explain the basis for discounting that limitation. Such an obligation ensures that any omission was intentional and supported by substantial evidence in the record." Cruz v. Bisignano, No. 1:24-CV-1966, 2025 WL 2813882, at *7 (M.D. Pa. Sept. 30, 2025) (citing Steinmetz v. Colvin, Civ. No. 23-CV-2066, 2025 WL 36159, *7 (M.D. Pa. Jan. 6, 2025); Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979)). Applying these legal benchmarks, a rising tide of caselaw has held that the unexplained failure of an ALJ

to incorporate a one-to-two step task limitation set forth in a medical opinion deemed persuasive constitutes error which may compel remand.

We are reminded of these familiar principles in the instant case. In this case, the ALJ found that the plaintiff, Michael Delillo, was not disabled and was capable of performing simple tasks. The ALJ reached this conclusion despite every treating source finding that Delillo's mental impairments were totally disabling. Instead, the ALJ claimed to be persuaded by the opinion of a non-treating, non-examining state agency expert. However, without explanation the ALJ failed to incorporate or acknowledge a critical aspect of this state agency expert medical opinion which the ALJ found persuasive; namely, the expert's conclusion that Delillo could perform one and two step tasks. (Tr. 86). The ALJ then identified occupations the plaintiff could perform based on this RFC, all of which required a reasoning level of two, a reasoning level which exceeded the one-to-two step task limitation prescribed by the state agency expert.

The failure of the ALJ to acknowledge or account for this limitation is notable because: (1) a limitation to simple tasks is not equivalent to a one-to-two step limitation; and (2) numerous courts have concluded that occupations requiring a reasoning level of 2 are not compatible with one-to-two task limitations. Here, despite a treating source consensus that Delillo was totally disabled, the ALJ instead

3

credited a non-treating, non-examining source. Yet, while the ALJ found the opinion of the state agency mental consultant persuasive, he failed to adopt or acknowledge the limitation to one- and two-step tasks opined by this expert. Thus, in our view, the ALJ's analysis does not provide a complete logical bridge for the decision denying benefits to the plaintiff.

This was error. Therefore, we will remand this case for further consideration by the Commissioner.

## II.    Statement of Facts and of the Case

On January 13, 2023, Michael Delillo filed an application for supplemental security income benefits, alleging disability beginning July 2, 2020. (Tr. 22). In this application Delillo alleged that he was disabled due to an array of physical and mental impairments, including bipolar II disorder; post-traumatic stress disorder (PTSD); stimulant use disorder (cocaine); alcohol use disorder; major depressive disorder (MDD); adult antisocial behavior; and right-side sciatica. (Tr. 24). Delillo was born on October 1, 1978 and was 44 years old on the date the application was filed, making him a younger worker under the Commissioner's regulations. (Tr. 33). He had a high school education, attended some college courses, but had no significant prior employment history. (Id.)

On appeal, Delillo has focused upon his emotional impairments, and the ALJ's alleged failure to adequately consider the degree to which those impairments limited him to one-to-two step tasks. With respect to these issues, the clinical record—while equivocal—contained substantial evidence documenting significant, on-going mental health conditions which resulted in at least one hospitalization. As the ALJ noted:

> In terms of the claimant's mental impairments, a review of the medical evidence of record reveals psychiatric treatment through medications and office visits at the Scranton Counseling Center for bipolar II disorder, PTSD, stimulant use disorder (cocaine), and alcohol use disorder, as of December 2021 (Exhibits 1F; 9F/14; 18F). Subsequently, the record shows the claimant was admitted to Wilkes-Barre Behavioral Hospital for three days in May 2022 on a voluntary commitment for anxiety, depression, hopelessness, helplessness, mood swings, a lot of racing thoughts, lack of sleep and self-care, and substance abuse (Exhibits 2F/1; 14F/53). The record then shows that the claimant treated with Tiffany Griffiths, Psy.D., starting June 6, 2022 with weekly individual psychotherapy sessions for MDD, PTSD, and adult antisocial behavior (Exhibits 11F; 22F; 31F). The record further shows that the claimant treated with Matthew Berger's. M.D., office in 2022 for his bipolar disorder and PTSD, with mental status exams revealing anxiety and depression at times, along with overproductive and repetitive speech (Exhibit 5F). Upon mental status exams during October 2023, December 2023, and April 2024 psychiatric telehealth visits, the claimant exhibited poor concentration and attention span (Exhibit 27F/3, 12, 21). Finally, the record shows that the claimant had stress related to school that caused depression/anxiety, as he was having difficulty with his focus/concentration in current English class in college program, and was in danger of failing the course in April 2024 (Exhibit 27F/1).

(Tr. 29).

5

Given this clinical history, three medical sources opined on the severity of Delillo's psychological impairments. Two of these medical sources had treatment histories with Delillo; both of these treating caregivers described Delillo's impairments as disabling. A third source—a non-treating, non-examining state agency expert—stated that Delillo could perform one-to-two step tasks.

On May 20, 2024, Delillo's counselor Amy Pusateri at the Scranton Counseling Center provided a medical statement describing Delillo's emotional impairments. (Tr. 1313-1317). According to Ms. Pusateri, Delillo suffered from depression, anxiety and agoraphobia. (Tr. 1313). He experienced impaired focus, concentration and memory along with extreme anxiety in unfamiliar settings. (Tr. 1316). Ms. Pusateri found that Delillo was seriously limited in multiple spheres of workplace activity including responding appropriately to changes in a routine work setting; dealing with normal work stress; being aware of workplace hazards; understanding and remembering detailed instructions; carrying out detailed instructions; setting realistic goals; dealing with stress of semiskilled and skilled work; traveling and using public transportation. (Tr. 1315-1316). She opined that he would miss two days of work each month. (Tr. 1317).

On April 16, 2024, a second treating source, Dr. Daniel Shust, provided a medical questionnaire describing Delillo's impairments. (Tr. 872-877). According

6

to the doctor, Delillo suffered from depression and panic attacks. (Tr. 872). As a result, Dr. Shust opined that Delillo would miss more than four days of work per month due to his impairments, (Tr. 876); and suffered from psychological conditions which were work preclusive in virtually all realms of workplace activity. (Tr. 873-874).

In addition to these treating source opinions, a non-treating, non-examining state agency expert, Dr. Karen Plowman,  described her view of Delillo's limitations on February 24, 2023. (Tr. 85-86). Dr. Plowman stated that Delillo was moderately impaired in a number of respects when it came to meeting the emotional demands of the workplace. (Id.) According to Dr. Plowman, Delillo "is able to meet the mental demands *for simple, one to two step tasks on a sustained basis despite the limitations associated with his impairments*." (Tr. 86) (emphasis added).

Dr. Plowman's opinion that Delillo could perform one-and-two steps tasks is significant. The reference to one-to-two step tasks is a term of art in Social Security practice which connotes jobs limited to reasoning level 1 since the definition of this reasoning level is confined to jobs which entail: "Apply[ing] commonsense understanding to carry out simple one- or two-step instructions." Dictionary of Occupational Titles, Appendix C - Components of the Definition Trailer, 1991 WL 688702. Thus, the state agency expert's opinion that Delillo could perform one-and-

7

two step tasks was tantamount to a finding that she was limited to reasoning level 1 jobs.

Accordingly, every source that examined the plaintiff concluded his mental impairments would significantly limit his ability to perform work-related activity. The treating source consensus indicated that these impairments were disabling. Moreover, the state agency medical expert clearly opined Delillo would be limited to performing one- and two-step tasks.

It was against this medical backdrop that Delillo's disability claim came to be heard by the ALJ on May 28, 2024, at which Delillo and a Vocational Expert (VE) testified. (Tr. 42-76). Notably, the ALJ's hypothetical questions posed to the VE did not include limitations to one- and two-step tasks. (Tr. 71-73). The VE then identified several jobs which he opined Delillo could perform. All of these tasks entailed reasoning level two, a reasoning level which exceeded the one-to-two step task limitations recommended by Dr. Plowman. See 727.687-054 Final Inspector, DICOT 727.687-054, 1991 WL 679672 (G.P.O. 1991); garment sorter, DICOT 222.687-014, 1991 WL 672131 (G.P.O. 1991); masker, DICOT 726.687-034, 1991 WL 679638 (G.P.O. 1991).

Following this hearing, on August 27, 2024, the ALJ issued a decision denying Delillo's application for benefits. (Tr. 22-34). In that decision, the ALJ first

8

concluded that the plaintiff had not engaged in substantial gainful activity since January 13, 2023, the application date. (Tr. 24). At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found that Delillo had the following severe impairments: bipolar II disorder; post-traumatic stress disorder (PTSD); stimulant use disorder (cocaine); alcohol use disorder; major depressive disorder (MDD); adult antisocial behavior; and right-side sciatica. (Id.) At Step 3, the ALJ determined that these impairments did not meet or medically equal the severity of any listed impairments. (Tr. 24-27).

Between Steps 3 and 4, the ALJ fashioned a residual functional capacity ("RFC"), considering the plaintiff's limitations from her impairments, stating that:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) with the following limitations. The claimant can climb ramps and stairs occasionally, never climb ladders, ropes, or scaffolds, balance occasionally, stoop occasionally, kneel occasionally, crouch occasionally, and never crawl. The claimant can work at unprotected heights frequently, moving mechanical parts frequently, in extreme cold frequently, and in vibration frequently. The claimant is able to perform simple work but not at a production rate pace (e.g., assembly line work). The claimant is able to interact with supervisors frequently. The claimant is able to interact with the public frequently. The claimant is able to tolerate few changes in a routine work setting defined as occasional changes in routine work setting.

(Tr. 27).

9

Notably, this RFC did not include any limitation to one-to-two step tasks. In formulating the RFC, the ALJ stated that he considered the medical opinions of those experts who opined on Delillo's mental RFC. On this score, the ALJ found the treating source consensus that these impairments were disabling unpersuasive. (Tr. 31-32). Instead, the ALJ embraced the opinion of the non-treating, non-examining state agency expert, Dr. Plowman, explaining:

> The undersigned also considered the opinion of the State agency psychological consultant at the initial level, Karen Plowman, Ph.D., who indicated that the claimant has the following mental functioning limitations: moderate in understanding, remembering, or applying information; moderate in interacting with others; moderate in concentrating, persisting, or maintaining pace; and moderate in adapting or managing oneself. Dr. Plowman further indicated that the claimant can understand and remember simple tasks; attend and complete simple tasks; interact appropriately with others; adapt to simple changes in routine; *and meet the mental demands for simple, one to two step tasks on a sustained basis despite the limitations associated with his impairments* (Exhibits 2A). The undersigned finds this opinion persuasive . . . .

(Tr. 31).

Nonetheless, despite finding this state agency mental consultant opinion persuasive—which the ALJ conceded included a restriction to one- and two-step tasks—the ALJ did not incorporate this limitation in the RFC or explain why it was not necessary. In fact, the ALJ did not further analyze, address, or acknowledge this limitation.

10

Having made these findings, the ALJ concluded that Delillo could perform work in the national economy, including the occupations of Final Inspector, Garment Sorter, and Masker Electronic Components, all of which were SVP-2 occupations that exceeded the one-to-two step task mental limitations found by Dr. Plowman. (Tr. 33). The ALJ then determined that the plaintiff did not meet the stringent standard for disability set by the Act and denied this claim. (Id.)

With the ALJ's decision cast in this enigmatic fashion, this appeal followed. (Doc. 1). On appeal, Delillo contends, *inter alia*, that the ALJ erred in failing to address the opinions of the state agency psychologist, that limited him to one- and two-step tasks and then relying upon jobs which exceeded these mental limitations in finding that Delillo was not disabled. After a review of the evidence, we agree that the ALJ's omission of this limitation was divorced from any medical opinion and unexplained in the ALJ's analysis, leaving the factual, legal and logical bridge between the evidence and the ALJ's findings lacking. Therefore, we will remand this case for further consideration by the Commissioner.

## III.   **Discussion**

### A. **Substantial Evidence Review – the Role of this Court**

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the

11

findings of the final decision-maker are supported by substantial evidence in the record. See 42 U.S.C. §405(g); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F. Supp.2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." Leslie v. Barnhart, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has underscored for us the limited scope of our review in this field, noting that:

12

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S.Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek, 139 S. Ct. at 1154.

The question before this Court, therefore, is not whether the claimant is disabled, but rather whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence") (alterations omitted); Burton v. Schweiker, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal

13

matters is plenary); Ficca, 901 F. Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

Several fundamental legal propositions which flow from this deferential standard of review. First, when conducting this review "we are mindful that we must not substitute our own judgment for that of the fact finder." Zirnsak v. Colvin, 777 F.3d 607, 611 (3d Cir. 2014) (citing Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005)). Thus, we are enjoined to refrain from trying to re-weigh the evidence. Rather our task is to simply determine whether substantial evidence supported the ALJ's findings. However, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review. Simply put, "this Court requires the ALJ to set forth the reasons for his decision." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000). As the Court of Appeals has noted on this score:

> In Burnett, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable meaningful judicial review. Id. at 120; see Jones v. Barnhart, 364 F.3d 501, 505 & n. 3 (3d Cir.2004). The ALJ, of course, need not employ particular "magic" words: "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." Jones, 364 F.3d at 505.

Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009).

14

Thus, in practice ours is a twofold task. We must evaluate the substance of the ALJ's decision under a deferential standard of review, but we must also give that decision careful scrutiny to ensure that the rationale for the ALJ's actions is sufficiently articulated to permit meaningful judicial review.

This principle applies with particular force to legal challenges, like the claim made here, based upon alleged inadequacies in the articulation of a claimant's mental RFC. In Hess v. Comm'r Soc. Sec., 931 F.3d 198, 212 (3d Cir. 2019), the United States Court of Appeals recently addressed the standards of articulation that apply in this setting. In Hess the court of appeals considered the question of whether an RFC which limited a claimant to simple tasks adequately addressed moderate limitations on concentration, persistence, and pace. In addressing the plaintiff's argument that the language used by the ALJ to describe the claimant's mental limitations was legally insufficient, the court of appeals rejected a *per se* rule which would require the ALJ to adhere to a particular format in conducting this analysis. Instead, framing this issue as a question of adequate articulation of the ALJ's rationale, the court held that: "as long as the ALJ offers a 'valid explanation,' a 'simple tasks' limitation is permitted after a finding that a claimant has 'moderate' difficulties in 'concentration, persistence, or pace.' " Hess v. Comm'r Soc. Sec., 931 F.3d 198, 211 (3d Cir. 2019). On this score, the appellate court indicated that an ALJ

15

offers a valid explanation a mental RFC when the ALJ highlights factors such as "mental status examinations and reports that revealed that [the claimant] could function effectively; opinion evidence showing that [the claimant] could do simple work; and [the claimant]'s activities of daily living, . . . ." Hess v. Comm'r Soc. Sec., 931 F.3d 198, 214 (3d Cir. 2019).

In our view, the teachings of the Hess decision are straightforward. In formulating a mental RFC the ALJ does not need to rely upon any particular form of words. Further, the adequacy of the mental RFC is not gauged in the abstract. Instead, the evaluation of a claimant's ability to undertake the mental demands of the workplace will be viewed in the factual context of the case, and a mental RFC is sufficient if it is supported by a valid explanation grounded in the evidence.

## B. Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); see also 20 C.F.R. §404.1505(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous

16

work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §423(d)(2)(A); 20 C.F.R. §404.1505(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §404.1520(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §404.1520(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's residual functional capacity (RFC). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§404.1520(e), 404.1545(a)(1). In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe

17

impairments identified by the ALJ at step two of his or her analysis.  20 C.F.R. §404.1545(a)(2).

There is an undeniable medical aspect to an RFC determination, since that determination entails an assessment of what work the claimant can do given the physical limitations that the claimant experiences. Yet, when considering the role and necessity of medical opinion evidence in making this determination, courts have followed several different paths. Some courts emphasize the importance of medical opinion support for an RFC determination and have suggested that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant." Biller v. Acting Comm'r of Soc. Sec., 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013) (quoting Gormont v. Astrue, Civ. No. 11–2145, 2013 WL 791455 at *7 (M.D. Pa. Mar. 4, 2013)). In other instances, it has been held that: "There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006). Further, courts have held in cases where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability that "the proposition that an ALJ must always base his RFC on a medical opinion from a

18

physician is misguided." <u>Cummings v. Colvin</u>, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

These seemingly discordant legal propositions can be reconciled by evaluation of the factual context of these decisions. Those cases which emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting where a well-supported medical source has identified limitations that would support a disability claim, but an ALJ has rejected the medical opinion which supported a disability determination based upon a lay assessment of other evidence. <u>Biller</u>, 962 F.Supp.2d at 778–79. In this setting, these cases simply restate the commonplace idea that medical opinions are entitled to careful consideration when making a disability determination, particularly when those opinions support a finding of disability. In contrast, when an ALJ is relying upon other evidence, such as contrasting clinical or opinion evidence or testimony regarding the claimant's activities of daily living, to fashion an RFC courts have adopted a more pragmatic view and have sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. <u>See Titterington v. Barnhart,</u> 174 F. App'x 6, 11 (3d Cir. 2006); <u>Cummings v. Colvin</u>, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015). In either event, once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if

19

it is supported by substantial evidence. <u>Burns v. Barnhart</u>, 312 F.3d 113, 129 (3d Cir. 2002); <u>see also Metzger v. Berryhill,</u> No. 3:16-CV-1929, 2017 WL 1483328, at *5 (M.D. Pa. Mar. 29, 2017), <u>report and recommendation adopted sub nom. Metzgar v. Colvin</u>, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017); <u>Rathbun v. Berryhill</u>, No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D. Pa. Mar. 12, 2018), <u>report and recommendation adopted</u>, No. 3:17-CV-301, 2018 WL 1479366 (M.D. Pa. Mar. 27, 2018).

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. <u>Mason</u>, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. §404.1512(f); <u>Mason</u>, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory

20

explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-07. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 433 (3d Cir. 1999).

## C. **Legal Benchmarks for the ALJ's Assessment of Medical Opinions**

The plaintiff filed this disability application following a paradigm shift in the manner in which medical opinions were evaluated when assessing Social Security claims. Prior to March 2017, ALJs were required to follow regulations which defined medical opinions narrowly and created a hierarchy of medical source opinions with treating sources at the apex of this hierarchy. However, in March of 2017, the Commissioner's regulations governing medical opinions changed in a number of fundamental ways. The range of opinions that ALJs were enjoined to consider were broadened substantially, and the approach to evaluating opinions was changed from a hierarchical form of review to a more holistic analysis. As one court as aptly observed:

> The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017, and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded. According to the new regulations, the Commissioner "will no longer

21

give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." Revisions to Rules Regarding the Evaluation of Medical Evidence ("Revisions to Rules"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867–68 (Jan. 18, 2017), see 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors." 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." Id. at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1). The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that formed the foundation of the treating source rule. Revisions to Rules, 82 Fed. Reg. 5844-01 at 5853.

An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c (b)(2), 416.920c(b)(2). With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." Id. at §§ 404.1520c(c)(1), 416.920c(c)(1). The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." Id. at §§ 404.1520c(c)(2), 416.920c(c)(2).

Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the

22

persuasiveness of a medical source's opinion. Id. at §§ 404.1520c(b)(2), 416.920c(b)(2). However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5). Id. at §§ 404.1520c(b)(3), 416.920c(b)(3).

Andrew G. v. Comm'r of Soc. Sec., No. 3:19-CV-0942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020).

Oftentimes, as in this case, an ALJ must evaluate various medical opinions. When presented with a disputed factual record, it is well-established that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011). However, the ALJ must still fully articulate the basis of this medical opinion evaluation. Thus, when evaluating medical opinions "the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Mason, 994 F.2d at 1066). It also follows that "when a medical opinion is found persuasive and contains a limitation to one- and two-step tasks, the ALJ is obligated to either: (1) include the limitation in the RFC and limit the claimant to reasoning level one occupations, or, (2) identify the substantial evidence that the ALJ is relying on in rejecting the limitation." Cruz, 2025 WL 2813882, at *8.

These legal benchmarks guide us in the instant case.

23

### D. **This Case Should Be Remanded.**

After a review of the record, we conclude that the ALJ's failure to address or incorporate the state agency consultant's opinion that Delillo would be limited to one- and two-step tasks despite finding this opinion persuasive was error. At the outset, in reviewing this ALJ's decision we find ourselves at the intersection between two well-settled paradigms in the Social Security field. First, our highly deferential standard of review empowers "[t]he ALJ – not treating or examining physicians or State agency consultants – [to] make the ultimate disability and RFC determinations." Chandler, 667 F.3d at 361. Thus, our decision in this case in no way undercuts the legal tenet that an ALJ is not required to adopt every limitation opined by the experts but "can formulate an RFC based on different parts from the different medical opinions." Durden, 191 F.Supp.3d at 455. However, at base, an ALJ must draft a reviewable opinion that is grounded in the evidence and provides the court with an adequately articulated rationale for the limitations adopted. Here, without the benefit of an explanation by the ALJ, we are unable to determine whether the ALJ's failure to address the limitation to one- and two-step tasks in the sole medical opinion the ALJ found persuasive was inadvertent or based upon the substantial evidence of record.

24

This assessment by the ALJ runs afoul of several well-settled legal tenets. First, as enumerated above, an ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter, 642 F.2d at 704. Furthermore, the ALJ must also "indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck, 181 F.3d at 433. Moreover, it is well-settled that an ALJ should refrain from substituting his own lay opinion in place of a medical opinion. Morales 225 F.3d at 319. These mandates apply here in the context of the ALJ's assessment of medical opinion evidence limiting a claimant to one-to-two step tasks. Indeed, this court, and others, have applied these paradigms in specifically concluding that "when a medical opinion is found persuasive and contains a limitation to one- and two-step tasks, the ALJ is obligated to either: (1) include the limitation in the RFC and limit the claimant to reasoning level one occupations, or, (2) identify the substantial evidence that the ALJ is relying on in rejecting the limitation." Cruz, 2025 WL 2813882, at *8. See also Rita R. v. Kijakazi, No. 21 C 5631, 2023 WL 2403139, at *3–4 (N.D. Ill. Mar. 8, 2023) ("Indeed, an ALJ is required to provide a thorough and appropriate explanation for rejecting a state agency psychologist's opinion that a claimant is limited to one-to-two step tasks.") The ALJ's decision in Delillo's case neither

25

included the one-to-two step limitation, nor explained why it was not incorporated into the RFC. This was error.

This error is not harmless here since the ALJ's conclusion that Delillo was not disabled is based upon his ability to perform work in occupations requiring a reasoning level of 2 which is inconsistent with a limitation to one- to two-step tasks. As this court explained:

> The DOT defines occupations by reasoning level and defines "reasoning level one" as the ability to "apply commonsense understanding to carry out *simple one-or two-step instructions.*" The similarity of that language to "one- and two-step tasks," leads us to conclude that an individual limited to "one-and two-step tasks" is likewise limited to "reasoning level one" occupations. Importantly, this limitation *is* dischargeable: an ALJ may find otherwise, so long as they rely on and cite to substantial evidence that adequately explains why they are omitting the limitation in the claimant's RFC despite having found the relevant medical opinion to be persuasive.

> Additionally, courts in eight of the eleven circuits where a District court has considered this issue have held that "simple repetitive tasks" and "one- and two-step tasks" are legally distinct limitations. And all but one of these cases also found that a limitation to "one- and two-step tasks" necessarily limits the claimant to reasoning level one occupations.

Cruz, 2025 WL 2813882, at *7. See also Id. at *3–4 (N.D. Ill. Mar. 8, 2023). See also Rita R., 2023 WL 2403139, at *3–4 ("The ALJ's error is of crucial importance because a limitation to 'simple tasks' (the RFC limitation the ALJ found here) encompasses jobs that may involve complexity beyond one-to-two step tasks");

26

Daniel M. v. Kijakazi, No. 2:21-CV-243, 2023 WL 154909, at *3 (D. Vt. Jan. 11, 2023) (collecting cases) (concluding reasoning Levels 2 and 3 are not consistent with "simple, one-to-two step tasks").

Simply put, more was needed here by way of explanation on the ALJ's part. Indeed, a rising tide of caselaw supports the view that the ALJ erred in failing to address the one and two step task limitation opined by the expert whose opinion he found persuasive.[2] Since the ALJ's burden of articulation is not met in the instant case, this matter will be remanded for further consideration by the Commissioner.

Yet, while we find that these errors compel a remand in this case, nothing in this Memorandum Opinion should be deemed as expressing a judgment on what the ultimate outcome of any reassessment of this evidence should be. Instead, that judgment should remain to province of the ALJ. Finally, because we have vacated and remanded the decision of the Commissioner on these grounds, we decline to address any other issues since "[a] remand may produce different results on these

---

[2] See e.g., Whitney v. Bisignano, No. 4:24-CV-1950, 2026 WL 522922, at *10 (M.D. Pa. Feb. 25, 2026);  Cruz v. Bisignano, No. 1:24-CV-1966, 2025 WL 2813882, at *7 (M.D. Pa. Sept. 30, 2025); Michelle M. v. Bisignano, No. 3:23-CV-02163, 2025 WL 2713737, at *7 (M.D. Pa. Sept. 23, 2025); Warren v. Dudek, No. 1:24-CV-635, 2025 WL 1168276, at *6 (M.D. Pa. Apr. 22, 2025);  Shipman v. Kizakazi, No. 3:22-CV-00636, 2023 WL 5599607, at *10 (M.D. Pa. Aug. 29, 2023).

claims, making discussion of them moot." <u>Burns v. Colvin</u>, 156 F.Supp.3d 579, 598 (M.D. Pa. Jan. 13, 2016).

## IV.  **<u>Conclusion</u>**

For the foregoing reasons the plaintiff's request for a new administrative hearing will be GRANTED, the final decision of the Commissioner denying these claims will be vacated, and this case will be remanded to the Commissioner to conduct a new administrative hearing.

An appropriate order follows.

*S/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

DATED: March 2, 2026